# 3:23-CV-0010



dasmin jerel, a living soul acting as
DASMIN JEREL COOK, *In Propria Persona*
On the land of the county at Large, Coweta.
Non-Domestic c/o: 54 Hill Street; near
Newnan. Georgia. [zip exempt]
Without the United States (28 U.S.C. 1746)

district court of the United States (exchequer side)
[28 U.S.C. § 90, 610]
via passagio

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF GEORGIA
### IN ADMIRALTY, IN REM

| | |
|---|---|
| STATE OF GEORGIA.<br>　　　　　　Plaintiff,<br>v.<br>DASMIN JEREL COOK,<br>　　　　　　Defendant/Interpleader.<br><br>By: dasmin jerel; and cook, aka Prince Bey, living Heir<br>　　　　Interpleader/Claimant. | district court CASE NO.:<br><br>STATE CASE NO.: 2021R0984<br><br>INTERPLEADER'S NOTICE OF REMOVAL TO FEDERAL JURISDICTION UNDER 28 U.S.C. §§ 1335, 1331, 1333, 1443, 1455, 2461, 2463 and Local Rule 67 et seq.<br><br>**A "Suit in Equity" In Re:<br>Property and Rights in Property** |

Pursuant to 28 U.S.C. §§ 1335, 1331, 1333, 1443, 1455, 2461 and 2463, Interpleader/Claimant, DASMIN JEREL COOK, by and through *dasmin jerel*, and cook, by special limited appearance in actor, *In Propria Persona*, (hereinafter "Interpleader" or "Claimant"), makes this claim in the nature of a "suit in equity" as Interpleader and Claimant to the exchequer side of the district courts having original jurisdiction by operation of law. This action now includes money, property and interests in property in excess of the jurisdictional and venue requirements established by 28 U.S.C. § 1335, which have been discovered in a Disputed Ownership Fund (IRC § 1.468B-9), and held in the custody of the law in the Court Registry Investment System ("CRIS") under the supervision and control of the Director for Administrative Office of the U.S. Courts.

*Interpleader/Claimant, as living Heir, is the true owner of all property or rights in property held in the custody of the law and by equitable right brings this suit in equity.*

In support of this Notice of Removal, Interpleader states as follows:

## PART ONE. CASE BACKGROUND

1.    On November 18, 2021, Plaintiff commenced an action in the superior court of Georgia, County of Cowetta, styled under *color of law* as "criminal" in nature.

2.    The *colorable* action seeks arrest of the Vessel ("Person") as an admiralty prize case (28 U.S.C. § 1333), and in an attempt to create a voluntary guardian/ward relationship, receivership or other custodial relationship by holding the property and rights in property of Interpleader in the "custody of the law." (Galatians 3:23-29).

3.    Interpleader is informed and aware that Defendant DASMIN JEREL COOK, is named as Defendant and is presumed to be an incompetent "minor" under a guardian/ward relationship with intent to hold Interpleader/Claimant's property in the "custody" of the law. Interpleader/Claimant is *not a minor*, has reached the age of majority and *age of termination*, and suffers no disabilities of minority. Attached hereto as Interpleader's **Annex A** is a true and correct copy of the evidentiary confirmation that Claimant has achieved age of majority and age of termination by operation of law.

4.    Since Plaintiff and its agents and attorneys, each of them, have reduced the matters of the court from those of a valid Constitutional nature under *Corpus Delicti*, to those of a private contractual nature in absence of an injured party accuser, the State and its agents and agencies, as well as the state court itself are operating under color of law and authority and have been reduced to the character of private citizens under the Clearfield Doctrine. *Clearfield Trust Co. v. U.S., 318 U.S. 363 (1943).*

2

5.     For purposes of removal under 28 U.S.C. § 1443, such corporations and individuals are regarded as entities *entirely separate from government*. Governments descend to the level of a mere private corporation and take on the character of a mere private citizen where private corporate commercial paper and securities are concerned. For purposes of this suit in equity, such corporations and individuals "are regarded as an entity ENTIRELY separate from government." *Bank of US v. Planters Bank, 22 U.S. 904(1894).* Actions under color of authority by an <u>entity</u>, entirely separate from government, lacks jurisdiction; its acts are VOID by operation of law.

6.     The state of Georgia, titled as the *entity* STATE OF GEORGIA (Dun & Bradstreet "D-U-N-S" #069230183), the court titled as the *entity* SUPERIOR COURT OF COWETA COUNTY (Dun & Bradstreet "D-U-N-S" #149340924), and the state attorneys titled as the *entity* DISTRICT ATTORNEY OF COWETA COUNTY, and JOHN HERBERT CRANDFORD, JR. and DISTRICT ATTORNEY COWETA JUDICIAL DISTRICT, for the *entity* COUNTY OF COWETA styled as COWETA, COUNTY OF under Commercial and Governmental Entity ("CAGE") code 5C4B2 and each of them jointly or severally, have created book entry securities in the name of or under implied surety of Interpleader/Claimant, with intent they be traded on a private exchange and held in the custody of the district courts of the United States (28 U.S.C. § 2045), titled as the entity UNITED STATES DISTRICT COURT, through its COURT REGISTRY INVESTMENT SYSTEM under the supervisory authority of the ADMINISTRATIVE OFFICE OF UNITED STATES COURTS (28 U.S.C. §§ 601 through 613). Original jurisdiction now lies in the district court in Interpleader.

7.      The parties appear to be making budget appropriation requests of the property of Interpleader/Claimant by inducing so called "*voluntary*" alienation, a contract, or other form of induced consent by threat duress and coercion, which is unlawful as it relates to custodian or guardianship funds held on behalf of implied minors.

8.      Interpleader/Claimant, having achieved self-evident age of majority and age of termination, denies all contractual alienations of his property, demands equity and return of all appropriated property and property held under guardianship, conservatorship, receivership, or seizure as a prize.

9.      It is clear from the actions of the parties, that Interpleader/Claimant appearing as his proper person within which he is secured, is prejudiced by conclusive presumptions that create a want of *Persona Standi in Judicio,* due to a presumption of disability as an incapacitated ward, an incapacitated Indian ward, an enemy, or a minor without control of his minor securities (31 CFR 363.6), such incapacitation mandates the court to act jealously to guard the property of the ward as its main purpose pursuant to the guidance of Corpus Juris Secundum (CJS)  and American Jurisprudence.

10.      It is clear from Interpleader's research that Custodial accounts and minor investments are held in the custody of the law, and Interpleader/Claimant establishes a right and claim thereto pursuant to 28 U.S.C. § 1335 making special appearance to the exchequer side of the district courts seeking protection of all property pending full disclosure and disposition of this "*suit in equity*."

11.      Interpleader/Claimant is a 100% stockholder of the United States of America. *Annex A.* Interpleader/Claimant is an adopted member of The Divine Ongweoweh for Yahweh (the Nation), an ecclesiastical state.

12.    The Nation is a recognized international organization of indigenous peoples established under the laws of the Empire of Morocco, a foreign state (28 U.S.C. § 1603), which extends the immunities and protections of the Laws and Treaties of the United States upon Interpleader/Claimant. Interpleader/Claimant is an Heir to the Will of the Father and of the United States of America. Interpleader/Claimant removes this action under 28 U.S.C., §§ 1331 and 1443 as a federal question seeking enforcement of treaty rights and protections accordingly, against parties operating under color of law.

13.    Interpleader/Claimant, having adopted his baptismal ceremony name, *Prince Bey*, is a Moorish-Moroccan and foreign national to the Moroccan Empire, which is a government in amity with the United States pursuant to Moorish-Moroccan treaties, namely the Treaty with the Delawares, at Fort Pitt (1778) and the continual Treaty of Peace and Friendship of 1836 between the United States of America and Morocco.

14.    Interpleader/Claimant is a *Moor*, classified as an *"Indian in Amity with this Government"* as enumerated in the Treaty with the Delawares. The United States of America and the States must give full faith and credit to these laws and treaties. (P.L. 1 Stat 50). This status as an *"Indian"* is codified at 25 U.S.C. § 2201 because the United States holds property in trust under a misappropriated authority as Guardian/Trustee.

15.    No preliminary hearing has taken place even though an alleged trial is scheduled for January 30th, 2023. These matters have been continued numerous times, yet no arraignment has been held as a continuation of the trespass upon Interpleader/Claimant, his inalienable rights, and immunities and protections by treaty.

16.    At no time have the parties informed Interpleader/Claimant of his right to consul as required by the Consular Notification and Access Manual, Fifth edition.

17.    Right to Consular notification and service of process through the Office of the Secretary of State, is established by article 36(b) of the 1963 Vienna Convention on Consular Relations, which was signed and ratified by the United States. This right to be informed of his right to Consul upon arrest was mandated by treaty and the Laws of the United States of America. Consul for The Divine Ongweoweh for Yahweh was unaware of any pending charges against their foreign national and would have refused any waiver of his immunities and protections, regardless.

**PART TWO. PARTIES**

18.    Interpleader/Claimant dasmin jerel; and cook appears In Propria Person DASMIN JEREL COOK, *not Individually*, and denies any legal disabilities seeking equitable relief in protection of the property and rights in property described herein. Interpleader/Claimant is not aware of any valid, legal, or equitable disabilities established by operation of law and challenges *Persona Standi in Judicio demanding strict proof of the state court's jurisdiction as a threshold matter.*

19.    Interpleader/Claimant is within the judicial knowledge and appears, *specially*, to invoke the equitable exchequer side and jurisdiction of this Honorable Court in protection of property and rights in property. Plaintiff is subject to the laws of the United States for acting under color of law in the unlawful arrest and seizure of the Vessel and private property of Interpleader/Claimant, *In Rem,* as a bounty and prize.

20.    Interpleader/Claimant is living, has reached the age of majority and age of termination, and no evidence to the contrary exists. Interpleader/Claimant has granted *no* contract of guardianship, trust, receivership, conservatorship or otherwise, *and no evidence to the contrary exists.*

Interpleader's Notice of Removal to Federal Jurisdiction

21.    Interpleader/Claimant makes special appearance to establish ownership of his private property, now held in the custody of the law, which is adverse to Plaintiff's attempt to claim the bounty as a prize. Interpleader/Claimant, in actor, *In Propria Persona*, is defined as a "foreign state" 28 U.S.C. §1603(b)(1) and (3) for the purposes of removal 28 USC §§ 1333, 1331, 1332, and 1335.

22.    Interpleader/Claimant, whose property and rights in property are being unlawfully held in a guardian/ward/custody relationship, alleges diversity of citizenship due to the situs of the property held being in the records and custody of the United States Treasury (located in District of Columbia), the Federal Reserve Bank of Dallas (located in District of Texas) and other contractual trust held by the Board of Trustees of the Social Security Administration (located in the District of Maryland) by Trustee JANET YELLEN, SECRETARY OF THE TREASURY and MANAGING TRUSTEE OF THE TRUST FUNDS (Located in the District of Columbia). *See 28 U.S.C. § 1332(c)(2).*

23.    Interpleader/Claimant is informed and aware that in order for the funds to be held in the custody of the law and deposited with the court (28 U.S.C. § 2041), and invested in the CRIS system (28 U.S.C. § 2045), that an order of the court must exist FRCP 67.1-Local Rule 67.1)

24.    For the Interpleader's Diversity Claims necessary under 28 U.S.C. § 1335, there exists complete diversity of the adverse parties to Interpleader/Claimant's property and rights in property. 28 U.S.C. § 1332(c) et seq.

25.    For the purposes of the Laws and Treaties of the United States of America under 28 U.S.C. § 1331, including the Treaty with the Delawares (1778) and the Treaty of Peace (1836), this Honorable Court has original jurisdiction as invoked herein.

26.     Interpleader/Claimant is aware of parties in the custody of property and operating a system of records holding rights in property, undisclosed but named herein, that need to be joined for appropriate disposition of all matters and adverse claims between said parties, and as they may appear. The Joinder parties are all subject to jurisdiction of this suit in equity under federal questions and the original jurisdiction of the district court by operation of law at 28 U.S.C. § 1335. These parties include the United States in protection of the interests of the Trust styled as the UNITED STATES OF AMERICA, the Department of the United States Treasury, the Federal Reserve, the State of Georgia and the People of the State of Georgia (GA), and any claimant operating as guardian, guardian ad litem, conservator, receiver, custodian, or trustee in the case of an infant/ward relationship as shall be exposed herein.

27.     Interpleader shall address joinder of parties and facts in support if required by the Court or as their adverse interests appear after Notice and Publication or as this Court deems just and equitable for complete disposition Interpleader/Claimant's property and rights in property. This court may not deny or remand jurisdiction without expressly violating Interpleader/Claimant's due process under the law and treaties of the United States of America.

28.     Interpleader seeks declaratory judgment 28 U.S.C. § 2201 in creation of an equitable remedy and to firmly and permanently establish the rights remedies of the parties, including full disclosure and accounting of the Disputed Ownership Funds ("DOF"), CRIS, Securities and other investments held in the custody of the law or in the custody or possession of others undisclosed who are acting in breach of duty. See Local Rule 67.1(B)(4). Interpleader reserves the right to report the accounting basis.

29.     Interpleader/Claimant is entitled to judicial review of the actions of Plaintiff its agents, assigns and unregistered foreign agents, each of them acting under color of law and authority placing all matters for review under original jurisdiction of this court as specifically set forth in law at 28 U.S.C. § 1443 and 1331.

30.     Interpleader/Claimant is entitled to declaratory judgment in creation of a remedy to resolve the adverse claims and actual controversy related to the unlawful acts of Plaintiff taken under color of law, as specifically enumerated in the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201 and 2202.

**Part Three. Jurisdiction and Venue**

31.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1335, 1331, 1333, 1443, 2461 and 2463. This Court has diversity jurisdiction only as necessary under 28 U.S.C. § 1335 to investigate, in equity, the location and situs of the custodial property by and thorough due process and inquiry. See also 28 U.S.C. § 1332(c)(2).

32.     Venue is proper in this Court because the state court utilizes the exchequer side of this Honorable Court for transmission and remittance of Court Registry Investment Funds to the United States Treasury (28 U.S.C. § 2041) and the Federal Reserve Bank of Dallas for prudent investment thereof (28 U.S.C. § 2045), and in the nature of interpleader against the Disputed Ownership Fund as outlined in 28 U.S.C. § 1335, this Court has original jurisdiction of this suit in equity.  The parties, and each of them as their interests shall appear, holding Interpleader/Claimant's interests, property, and rights in property under any theory of law or equity, conduct themselves in the District of this Court and their respective diversity Districts, and are subjects of its original jurisdiction.

**Part Four. Legal Standard**

33.    This removal is proper in that district courts shall have original jurisdiction of all matters in Interpleader. 28 U.S.C. § 1335.

34.    This removal is proper in that district courts shall have original jurisdiction, *exclusive* of the courts of the States, over any civil case of admiralty or maritime jurisdiction, and any prize brought into the United States and all proceedings for the condemnation of property taken as prize pursuant to 28 U.S.C. §1333.

35.    This removal is proper in that district courts shall have original jurisdiction, exclusive of the courts of the States, over federal questions that arise under the Laws and Treaties of the United States of America pursuant to 28 U.S.C. § 1331.

36.    This removal is proper in that district courts shall have original jurisdiction in determination of constitutional violations and acts taken under color of law pursuant to 28 U.S.C. § 1443 with definitive authority to enforce 18 U.S.C. §§ 4, 112, 241 and 242 as expressed in law.

37.    Since all matters are founded on evidence of Disputed Ownership Funds, CRIS accounts, identity theft, counterfeit securities and other acts taken under color of law and authority, including the fraud on the court by parties claiming funds thereunder, Interpleader/Claimant reserve the right to seek a Writ of Coram Nobis in the event any judgment is entered by the offending court for Plaintiff. *See FRAP 21.*

38.    This removal is concurrently filed in abundance of caution under 28 U.S.C. § 1455. Although initiated by Plaintiff under color of a criminal action, this action is nothing more than a mere contractual inducement that suffers fatal flaws including: (1) failure to certify the charges in the record, (2) the production or presentment of a valid

**Part Seven. CONCLUSION**

**57.** Based upon the information contained within and attached thereto, this district court has ***original*** jurisdiction over Interpleader's claims pursuant to 28 U.S.C. § 1335 as a "suit in equity", to adjudication of the property held as a prize pursuant to 28 U.S.C. § 1333, jurisdiction over a federal question under the Laws and Treaty relations of the United States of America pursuant to 28 U.S.C. § 1331, and jurisdiction over the contracting adverse and Joinder parties under diversity pursuant to 28 U.S.C. § 1332, and over this action pursuant to 28 U.S.C. § 2461 and 2463. Interpleader is therefore entitled to remove this case to this Court as a suit in equity and claims under the Laws and Treaty Relations of the United States of America. Interpleader is entitled to the creation of an equitable remedy sought by this removal pursuant to 28 U.S.C. § 2201.

Wherefore, Interpleader requests that the action before the Superior Court of Georgia, County of Coweta, Case Number: 2021R0984 and any/all associated case numbers and Court Registry Investment System Accounts formed under such cases be, and hereby are, removed to the original jurisdiction of this district court of the United States.

I state that the foregoing is true, complete and correct and will verify the same in open court.

Respectfully Submitted, January 20th 2023

DASMIN JEREL COOK, Interpleader/Claimant

By: _dasmin Cook_

dasmin jerel; and cook,
*In Propria Persona* not Individually.

17

## PROOF OF SERVICE

## STATE OF GEORGIA, COUNTY OF COWETA

I am over the age of 18 and competent to testify to these matters. On January 20th, 2023, I served the foregoing document(s) upon the following:

Addressed to:

Case Number: 2021R0984
c/o Niki Sewell, Clerk of Superior Court Coweta County
72 Greenville Street
Newnan, Georgia 30263
**(By Personal Service)**

and Addressed to:

Counsel For Plaintiff
Coweta County District Attorney's Office
Attn.: Dustin Young
72 Greenville St., 3rd Floor
Newnan, GA 30263
**(By First Class Mail and Personal Service)**

Director of the Office of Administrative Office
of the United States Courts,
Attn: James Duff
One Columbus Circle NE
Washington, DC. 20544
**(By First Class Mail)**

Executed in Coweta County, Newnan, Georgia I declare under penalty of perjury under the laws of the United States that the above is true and correct.

DASMIN JEREL COOK, Interpleader/Claimant

By: _____

dasmin jerel; and cook,
*In Propria Persona* not Individually.

18

Interpleader's Notice of Removal to Federal Jurisdiction

## **TABLE OF ANNEXES**

1. **Annex A:** Thurston County Auditor, Washington State certified recording of certificate transferred to grantee Dasmin Jerel Cook

2. **Annex B**: TREATY OF PEACE AND FRIENDSHIP BETWEEN THE UNITED STATES OF AMERICA AND HIS IMPERIAL MAJESTY THE EMPEROR OF MOROCCO https://founders.archives.gov/documents/Adams/06-18-02-0196

3. **Annex C**: United States Department of State, Treaties in Force 2020 https://www.state.gov/wp-content/uploads/2020/08/TIF-2020-Full-website-view.pdf

4. **Annex D:** INTERPLEADER'S NOTICE OF NOTICE OF REMOVAL TO FEDERAL JURISDICTION UNDER 28 U.S.C. §§ 1335, 1331, 1333, 1443, 1455, 2461, 2463 and Local Rule 67 et seq.

5. **Annex E:** "Accusation" issued by COWETA COUNTY DISTRICT ATTORNEY JOHN HERBERT CRANFORD JR. dated November 18th 2021

6. **Annex F:** "General Bond" with allonge for deposit to and for the account of the United States

RETURN ADDRESS

Dasmin Jerel Cook
54 Hill Street
Newnan, GA 30263

## Document Title(s)

Birth Certificate

## Reference Numbers(s) of related documents

### State File # 110-94-037325

Additional Reference #=s on page

## Grantor(s) (Last, First and Middle Initial)

State of Georgia

Additional grantors on page

## Grantee(s) (Last, First and Middle Initial)

Dasmin Jerel Cook

Additional grantees on page

## Legal Description (abbreviated form: i.e. lot, block, plat or section, township, range, quarter/quarter)

Additional legal is on page

## Assessor's Property Tax Parcel/Account Number

Additional parcel #=s on page

**The Auditor/Recorder will rely on the information provided on this form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.**

4963907
01/09/2023 11:49 AM Birth Certificate
Thurston County Washington
DASMIN COOK

# CERTIFICATE OF VITAL RECORD

**VERIFY PRESENCE OF WATERMARK    HOLD TO LIGHT TO VIEW**

**STATE OF GEORGIA CERTIFICATE OF LIVE BIRTH**

| | | |
|---|---|---|
| Deaths Number | Local File Number **940375** | State File Number 1. **110-** 94-037325 |

**TYPE OR PRINT IN PERMANENT BLACK OR BLUE-BLACK INK**

**CHILD**

| 2. CHILD'S NAME: FIRST | 3. MIDDLE | 4. LAST | 5. JR, II, ETC. | 6. SEX (M or F) | 7. DATE OF BIRTH (Mo, Day, Year) | 8. TIME OF BIRTH |
|---|---|---|---|---|---|---|
| DASMIN | JEREL | COOK | | Male | May 10, 1994 | 7:14 ☐ AM ☒ PM |

| 9. THIS BIRTH (Single, Twin, Triplet, Etc.) | 10. IF NOT SINGLE SPECIFY BIRTH ORDER | 11. CITY, TOWN, OR LOCATION OF BIRTH |
|---|---|---|
| Single | | Newnan |

| 12. HOSPITAL/FACILITY NAME (if not Hospital, give Street and Number) | 13. IF NOT HOSPITAL (Check one) | 14. COUNTY OF BIRTH |
|---|---|---|
| Peachtree Regional Hospital | ☐1 Clinic/Doctor's Office  ☐3 Free Standing Birthing Center  ☐2 Residence  ☐4 Other | Coweta |

**MOTHER**

| 15. MOTHER'S NAME: FIRST | 16. MIDDLE | 17. LAST | 18. MAIDEN (Last name) | 19. DATE OF BIRTH (Mo, Day, Year) | 20. STATE OF BIRTH (if not U.S.A, Name Country) |
|---|---|---|---|---|---|
| Merdess | Elaine | Cook | Cook | Jan. 9, 1977 | Georgia |

| 21. RESIDENCE—STATE | 22. COUNTY | 23. CITY, TOWN OR LOCATION | 24. STREET AND NUMBER OF RESIDENCE |
|---|---|---|---|
| Georgia | Coweta | Newnan | 22 Hillandale St. Lot 8 |

| 25. MOTHER'S MAILING ADDRESS—IF SAME AS ABOVE, ENTER ZIP CODE | 26. RESIDENCE INSIDE CITY LIMITS? (Yes or No) |
|---|---|
| 30263 | Yes |

**SEE MANUAL FOR INSTRUCTIONS**

**FATHER**

| 27. FATHER'S NAME: FIRST | 28. MIDDLE | 29. LAST, JR, ETC. | 30. DATE OF BIRTH (Mo, Day, Year) | 31. STATE OF BIRTH (if not U.S.A, Name Country) |
|---|---|---|---|---|
| | | | | |

| 32a. INFORMANT'S NAME (Type or Print) | 32b. RELATION TO CHILD | 33. PARENT(S) AUTHORIZE RELEASE OF INFORMATION TO SOCIAL SECURITY ADMINISTRATION TO ISSUE THIS CHILD A SOCIAL SECURITY NUMBER. Yes ☒ 1 No ☐ 2 |
|---|---|---|
| Merdess Elaine Cook | Mother | |

**CERTIFIER**

| 34. I CERTIFY THAT THE ABOVE NAMED CHILD WAS BORN ALIVE AT THE PLACE AND TIME AND ON THE DATE STATED ABOVE (Signature) | 35. DATE SIGNED (Mo, Day, Year) | 36. ATTENDANT AT BIRTH IF OTHER THAN CERTIFIER (Type or Print) | 37. (Title) |
|---|---|---|---|
| ▶ W.M. Lonergan M.D. | 5/23/94 | (Name) | |

| 38. CERTIFIER—NAME AND TITLE (Type or Print) | 39. PHYSICIAN'S MEDICAL LIC. NO. | 40. CERTIFIER—MAILING ADDRESS (Street or RFD, No., City or Town, State, Zip) |
|---|---|---|
| Walter M. Lonergan, II, M.D. | 27401 | 59 Hospital Road Newnan, Georgia 30263 |

MAY 27 1994

**REGISTRAR**

| 41. REGISTRAR (Signature) | 42. DATE RECEIVED BY LOCAL REGISTRAR (Mo, Day, Year) |
|---|---|
| Mary T. Crawford | MAY 23 1994 |

Form 3901 (Rev 2-90) DEPARTMENT OF HUMAN RESOURCES, VITAL RECORDS SERVICE

**STATE COPY**

THIS IS TO CERTIFY THAT THIS IS A TRUE REPRODUCTION OF THE ORIGINAL RECORD ON FILE WITH THE GEORGIA DEPARTMENT OF PUBLIC HEALTH, STATE OFFICE OF VITAL RECORDS. THIS CERTIFIED COPY IS ISSUED UNDER THE AUTHORITY OF CHAPTER 31-10, CODE OF GEORGIA AND 511-1-3, DPH RULES AND REGULATIONS. Any reproduction of this document is prohibited by statute. Do not accept unless on security paper with seal of Vital Records clearly embossed. Chapter 31-10, Code of Georgia as amended.

Form 3972 (Rev 5/15)

Christopher J. Harris
State Registrar    7891823

Deidre L. Slobod
County Registrar    DEC 30 2022

C6759880

**WARNING:** THIS DOCUMENT IS PRINTED ON SECURITY WATERMARKED PAPER AND CONTAINS SECURITY FIBERS. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK. THE DOCUMENT FACE CONTAINS A SECURITY BACKGROUND, EMBOSSED SEAL AND THERMOCHROMIC INK. THE BACK CONTAINS SPECIAL LINES WITH TEXT.

STATE OFFICE VITAL RECORDS

STATE OF GEORGIA 1776

**VOID IF ALTERED OR COPIED**



# LIBRARY OF CONGRESS

Office of Business Enterprises
Duplication Services Section

THIS IS TO CERTIFY that the collections of the Library of Congress contain a publication entitled **THE PUBLIC STATUTES AT LARGE OF THE UNITED STATES OF AMERICA from March 1933 to June 1934,** and that the attached photocopies from Volume XLVIII – the title page, the publisher's page, and pages 484 through 487 on which appears the TREATY WITH MOROCCO, September 16, 1836 – are a                   ntation from that work.

THIS IS TO CERTIFY FURTHER, that the publisher's page is             a Library of Congress Order Division stamp that bears the date Jan 28 1991.

IN WITNESS WHEREOF, the seal of the Library of Congress is         hereto on September 4, 2014.

Gregory T. Cooper
Duplication Services, Section Head
Office of Business Enterprises
Library of Congress

101 Independence Avenue, SE Washington, DC 20540–4917 Tel 202.707.5650 www.loc.gov; duplicationservices@loc.gov

# THE
# STATUTES AT LARGE

OF THE

## UNITED STATES OF AMERICA

FROM

### MARCH 1933 to JUNE 1934

CONCURRENT RESOLUTIONS
RECENT TREATIES AND CONVENTIONS, EXECUTIVE PROCLAMATIONS
AND AGREEMENTS, TWENTY-FIRST AMENDMENT
TO THE CONSTITUTION

EDITED, PRINTED, AND PUBLISHED BY AUTHORITY OF CONGRESS
UNDER THE DIRECTION OF THE SECRETARY OF STATE

## VOL. XLVIII

IN TWO PARTS

PART 1—Public Acts and Resolutions.
PART 2—Private Acts and Resolutions, Concurrent Resolutions
Treaties and Conventions, Executive Proclamations
and Agreements, Twenty-first Amendment to the
Constitution.

## PART 1

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1934

KF50
.U5
vol 48, pt 1
Set 2
LLRR



LIBRARY OF CONGRESS
6
JAN 28 1991
COPY
ORDER DIVISION

The original of every act and joint resolution printed in this volume from page 1 to page 311, inclusive, has the following heading:

SEVENTY-THIRD CONGRESS OF THE UNITED STATES OF AMERICA;

AT THE FIRST SESSION,

BEGUN AND HELD AT THE CITY OF WASHINGTON ON THURSDAY, THE NINTH DAY OF MARCH, ONE THOUSAND NINE HUNDRED AND THIRTY-THREE

The original of every act and joint resolution printed in this volume from page 313 to page 1291, inclusive, has the following heading:

SEVENTY-THIRD CONGRESS OF THE UNITED STATES OF AMERICA;

AT THE SECOND SESSION,

BEGUN AND HELD AT THE CITY OF WASHINGTON ON WEDNESDAY, THE THIRD DAY OF JANUARY, ONE THOUSAND NINE HUNDRED AND THIRTY-FOUR

All bills and joint resolutions presented to the President of the United States bear the signatures of the Speaker (or of the Speaker *pro tempore*) of the House of Representatives and of the Vice President and President of the Senate (or of the President of the Senate *pro tempore*); those signatures accordingly appear on the originals of all acts and joint resolutions.

The signature of the President of the United States appears on the originals of all approved acts and joint resolutions.

The original of every act and joint resolution has endorsed thereon a certificate of origin, signed, as the case may be, by the Clerk of the House of Representatives or by the Secretary of the Senate and reading "I certify that this Act (or Joint Resolution) originated in the House of Representatives (or Senate)." The origin of each act and resolution contained in this volume is indicated in the margin at the beginning of each enactment; thus, for example, H.R. 1491 or H.J.Res. 75 indicates origin in the House of Representatives; and S. 508 or S.J.Res. 14 indicates origin in the Senate.



This volume is printed on acid free paper by
WILLIAM S. HEIN & CO., INC.

# TREATY WITH MOROCCO. (a)

In the name of God, the merciful and clement!

Sept. 16, 1836.

Proclamation
of the President
of the U. S.,
an. 30, 1837.



Emperor's — Abd Errahman Ibenu Kesham, whom God exalt! — Seal.

PRAISE BE TO GOD!

This is the copy of the Treaty of Peace which we have made with the Americans and written in this book; affixing thereto our blessed seal, that, with the help of God, it may remain firm forever.

Written at Meccanez, the city of Olives, on the 3d day of the month Jumad el Iahhar, in the year of the Hegira 1252. (Corresponding to Sept. 16. A. D. 1836.)

**Mutual agreement of the parties to the treaty.**

ART. 1. We declare that both parties have agreed that this treaty, consisting of twenty-five articles, shall be inserted in this book, and delivered to James R. Leib, agent of the United States, and now their resident consul at Tangier, with whose approbation it has been made, and who is duly authorized on their part, to treat with us, concerning all the matters contained therein.

**Neither party to take commissions from an enemy.**

ART. 2. If either of the parties shall be at war with any nation whatever, the other shall not take a commission from the enemy, nor fight under their colors.

**Persons, &c. of one party, captured in an enemy's vessel, to be released.**

ART. 3. If either of the parties shall be at war with any nation whatever, and take a prize belonging to that nation, and there shall be found on board subjects or effects belonging to either of the parties, the subjects shall be set at liberty, and the effects returned to the owners. And if any goods, belonging to any nation, with whom either of the parties shall be at war, shall be loaded on vessels belonging to the other party, they shall pass free and unmolested, without any attempt being made to take or detain them.

**Vessels to have passports.**

ART. 4. A signal, or pass, shall be given to all vessels belonging to both parties, by which they are to be known when they meet at sea; and if the commander of a ship of war of either party shall have other ships under his convoy, the declaration of the commander shall alone be sufficient to exempt any of them from examination.

**Visit of vessels at sea.**

ART. 5. If either of the parties shall be at war, and shall meet a vessel at sea belonging to the other, it is agreed, that if an examination is to be made, it shall be done by sending a boat with two or three men only: and if any gun shall be fired, and injury done, without reason, the offending party shall make good all damages.

**American citizens and effects to be restored.**

ART. 6. If any Moor shall bring citizens of the United States, or their effects, to his Majesty, the citizens shall immediately be set at liberty, and the effects restored; and, in like manner, if any Moor, not a subject of these dominions, shall make prize of any of the citizens

---

(a) For the treaty with Morocco of January 1787, see ante, page 100.

(434)

### TREATY WITH MOROCCO. 1836.

of America or their effects, and bring them into any of the ports of his Majesty, they shall be immediately released, as they will then be considered as under his Majesty's protection.

ART. 7. If any vessel of either party, shall put into a port of the other, and have occasion for provisions or other supplies, they shall be furnished without any interruption or molestation.

*Vessels in port to be supplied.*

ART. 8. If any vessel of the United States, shall meet with a disaster at sea, and put into one of our ports to repair, she shall be at liberty to land and reload her cargo, without paying any duty whatever.

*No duty in case of vessels putting in to repair.*

ART. 9. If any vessel of the United States, shall be cast on shore on any part of our coasts, she shall remain at the disposition of the owners, and no one shall attempt going near her without their approbation, as she is then considered particularly under our protection; and if any vessel of the United States shall be forced to put into our ports by stress of weather, or otherwise, she shall not be compelled to land her cargo, but shall remain in tranquility until the commander shall think proper to proceed on his voyage.

*Stranded vessels to be protected.*

ART. 10. If any vessel of either of the parties shall have an engagement with a vessel belonging to any of the Christian Powers, within gun-shot of the forts of the other, the vessel so engaged, shall be defended and protected as much as possible, until she is in safety: and if any American vessel shall be cast on shore, on the coast of Wadnoon, or any coast thereabout, the people belonging to her, shall be protected and assisted, until by the help of God, they shall be sent to their country.

*Vessels engaged within gunshot of forts to be protected.*

ART. 11. If we shall be at war with any Christian Power, and any of our vessels sails from the ports of the United States, no vessel belonging to the enemy shall follow, until twenty-four hours after the departure of our vessels: and the same regulations shall be observed towards the American vessels sailing from our ports, be their enemies Moors or Christians.

*Enemy's vessels not allowed to follow for 24 hours.*

ART. 12. If any ship of war belonging to the United States, shall put into any of our ports, she shall not be examined on any pretence whatever, even though she should have fugitive slaves on board, nor shall the governor or commander of the place compel them to be brought on shore on any pretext, nor require any payment for them.

*Ships of war not to be examined in port.*

ART. 13. If a ship of war of either party shall put into a port of the other, and salute, it shall be returned from the fort with an equal number of guns, not more or less.

*Salutes to be returned.*

ART. 14. The commerce with the United States, shall be on the same footing as is the commerce with Spain, or as that with the most favored nation for the time being; and their citizens shall be respected and esteemed, and have full liberty to pass and repass our country and seaports whenever they please, without interruption.

*American commerce on the most favored footing.*

ART. 15. Merchants of both countries shall employ only such interpreters, and such other persons to assist them in their business, as they shall think proper. No commander of a vessel shall transport his cargo on board another vessel; he shall not be detained in port longer than he may think proper; and all persons employed in loading or unloading goods, or in any other labor whatever, shall be paid at the customary rates, not more and not less.

*Employment of interpreters, &c.*

ART. 16. In case of a war between the parties, the prisoners are not to be made slaves, but to be exchanged one for another, captain for captain, officer for officer, and one private man for another; and if there

*Exchange of prisoners.*

2 q 2

486                    TREATY WITH MOROCCO. 1836.

shall prove a deficiency on either side, it shall be made up by the pay-
ment of one hundred Mexican dollars for each person wanting. And
it is agreed, that all prisoners shall be exchanged in twelve months from
the time of their being taken, and that this exchange may be effected
by a merchant, or any other person, authorized by either of the parties.

No compulsion in buying or selling.

ART. 17. Merchants shall not be compelled to buy or sell any kind
of goods but such as they shall think proper: and may buy and sell all
sorts of merchandise but such as are prohibited to the other Christian
nations.

No examina-tion of goods on board, except, &c.

ART. 18. All goods shall be weighed and examined before they are
sent on board; and to avoid all detention of vessels, no examination
shall afterwards be made, unless it shall first be proved that contraband
goods have been sent on board; in which case, the persons who took
the contraband goods on board, shall be punished according to the
usage and custom of the country, and no other person whatever shall
be injured, nor shall the ship or cargo incur any penalty or damage
whatever.

No detention of vessels.

ART. 19. No vessel shall be detained in port on any pretence what-
ever, nor be obliged to take on board any article without the consent of
the commander, who shall be at full liberty to agree for the freight of
any goods he takes on board.

Disputes be-tween Ameri-cans, &c. to be decided by the consul, &c.

ART. 20. If any of the citizens of the United States, or any persons
under their protection, shall have any dispute with each other, the
consul shall decide between the parties; and whenever the consul shall
require any aid, or assistance from our Government, to enforce his deci-
sions, it shall be immediately granted to him.

Killing, &c. punishable by the law of the country.

ART. 21. If a citizen of the United States should kill or wound a
Moor, or, on the contrary, if a Moor shall kill or wound a citizen of the
United States, the law of the country shall take place, and equal justice
shall be rendered, the consul assisting at the trial; and if any delinquent
shall make his escape, the consul shall not be answerable for him in any
manner whatever.

Persons dying intestate; care of their effects.

ART. 22. If an American citizen shall die in our country, and no
will shall appear, the consul shall take possession of his effects; and if
there shall be no consul, the effects shall be deposited in the hands of
some person worthy of trust, until the party shall appear who has a
right to demand them; but if the heir to the person deceased be present,
the property shall be delivered to him without interruption; and if a
will shall appear the property shall descend agreeably to that will, as
soon as the consul shall declare the validity thereof.

Residence of consul. [It is generally at Tangier.]

ART. 23. The consul of the United States of America, shall reside
in any seaport of our dominions that they shall think proper: and they
shall be respected, and enjoy all the privileges which the consuls of any
other nation enjoy: and if any of the citizens of the United States shall
contract any debts or engagements, the consul shall not be in any
manner accountable for them, unless he shall have given a promise in
writing for the payment or fulfilling thereof; without which promise in
writing, no application to him for any redress shall be made.

No appeal to arms until refu-sal of friendly arrangement.

ART. 24. If any differences shall arise by either party infringing on
any of the articles of this treaty, peace and harmony shall remain not-
withstanding, in the fullest force, until a friendly application shall be
made for an arrangement; and until that application shall be rejected,
no appeal shall be made to arms. And if a war shall break out between
the parties, nine months shall be granted to all the subjects of both
parties, to dispose of their effects and retire with their property. And

shall prove a deficiency on either side, it shall be made up by the payment of one hundred Mexican dollars for each person wanting.  And it is agreed, that all prisoners shall be exchanged in twelve months from the time of their being taken, and that this exchange may be effected by a merchant, or any other person, authorized by either of the parties.

**No compulsion in buying or selling.**  ART. 17. Merchants shall not be compelled to buy or sell any kind of goods but such as they shall think proper: and may buy and sell all sorts of merchandise but such as are prohibited to the other Christian nations.

**No examination of goods on board, except, &c.**  ART. 18. All goods shall be weighed and examined before they are sent on board; and to avoid all detention of vessels, no examination shall afterwards be made, unless it shall first be proved that contraband goods have been sent on board; in which case, the persons who took the contraband goods on board, shall be punished according to the usage and custom of the country, and no other person whatever shall be injured, nor shall the ship or cargo incur any penalty or damage whatever.

**No detention of vessels.**  ART. 19. No vessel shall be detained in port on any pretence whatever, nor be obliged to take on board any article without the consent of the commander, who shall be at full liberty to agree for the freight of any goods he takes on board.

**Disputes between Americans, &c. to be decided by the consul, &c.**  ART. 20. If any of the citizens of the United States, or any persons under their protection, shall have any dispute with each other, the consul shall decide between the parties; and whenever the consul shall require any aid, or assistance from our Government, to enforce his decisions, it shall be immediately granted to him.

**Killing, &c. punishable by the law of the country.**  ART. 21. If a citizen of the United States should kill or wound a Moor, or, on the contrary, if a Moor shall kill or wound a citizen of the United States, the law of the country shall take place, and equal justice shall be rendered, the consul assisting at the trial; and if any delinquent shall make his escape, the consul shall not be answerable for him in any manner whatever.

**Persons dying intestate; care of their effects.**  ART. 22. If an American citizen shall die in our country, and no will shall appear, the consul shall take possession of his effects; and if there shall be no consul, the effects shall be deposited in the hands of some person worthy of trust, until the party shall appear who has a right to demand them; but if the heir to the person deceased be present, the property shall be delivered to him without interruption; and if a will shall appear the property shall descend agreeably to that will, as soon as the consul shall declare the validity thereof.

**Residence of consul. [It is generally at Tangier.]**  ART. 23. The consul of the United States of America, shall reside in any seaport of our dominions that they shall think proper: and they shall be respected, and enjoy all the privileges which the consuls of any other nation enjoy: and if any of the citizens of the United States shall contract any debts or engagements, the consul shall not be in any manner accountable for them, unless he shall have given a promise in writing for the payment or fulfilling thereof; without which promise in writing, no application to him for any redress shall be made.

**No appeal to arms until refusal of friendly arrangement.**  ART. 24. If any differences shall arise by either party infringing on any of the articles of this treaty, peace and harmony shall remain notwithstanding, in the fullest force, until a friendly application shall be made for an arrangement; and until that application shall be rejected, no appeal shall be made to arms.  And if a war shall break out between the parties, nine months shall be granted to all the subjects of both parties, to dispose of their effects and retire with their property.  And

it is further declared, that whatever indulgence, in trade or otherwise, shall be granted to any of the Christian Powers, the citizens of the United States shall be equally entitled to them.

*In case of war, nine months allowed to settle affairs, &c.*

ART. 25. This treaty shall continue in force, with the help of God, for fifty years; after the expiration of which term, the treaty shall continue to be binding on both parties, until the one shall give twelve months' notice to the other, of an intention to abandon it; in which case, its operations shall cease at the end of the twelve months.

*Treaty to last fifty years, &c.*

*Consulate of the United States of America.*
*For the Empire of Morocco.*

TO ALL WHOM IT MAY CONCERN.

Be it known. Whereas the undersigned, James R. Leib, a citizen of the United States of North America, and now their resident consul at Tangier, having been duly appointed commissioner, by *letters patent,* under the signature of the President and seal of the United States of North America, bearing date, at the city of Washington, the 4th day of July A. D. 1835, for negotiating and concluding a treaty of *peace and friendship* between the United States of North America and the Empire of Morocco; I, therefore, James R. Leib, Commissioner as aforesaid, do conclude the foregoing treaty and every article and clause therein contained; reserving the same, nevertheless, for the final ratification of the President of the United States of North America, by and with the advice and consent of the Senate.

*Final ratification reserved for President U. S.*

In testimony whereof, I have hereunto affixed my signature, and the seal of this consulate, on the 1st day of October, in the year of our Lord one thousand eight hundred and thirty-six, and of the Independence of the United States the sixty-first.

JAMES R. LEIB,    (L. S.)

---

# GENERAL CONVENTION OF PEACE, FRIENDSHIP, COMMERCE, AND NAVIGATION,

*Between the United States of America and the Peru-Bolivian Confederation.*

*Nov. 13, 1836.*
*Ratifications exchanged, May 28, 1838. Proclamation of the President of the U. S., Oct. 3, 1838. Peace and friendship.*

THE United States of America and the Peru-Bolivian Confederation, desiring to make firm and permanent the peace and friendship which happily subsist between them, have resolved to fix, in a clear, distinct, and positive manner, the rules which shall, in future, be religiously observed between the one and the other, by means of a treaty, or general convention of peace, friendship, commerce, and navigation.

For this desirable purpose, the President of the United States of America has conferred full powers on Samuel Larned, Chargé d'Affaires of the said States, near the Government of Peru; and the Supreme Protector of the north and south Peruvian States, President of the Republic of Bolivia, encharged with the direction of the foreign relations of the Peru-Bolivian Confederation, has conferred like powers on John Garcia del Rio, Minister of State in the Department of Finance

*Negotiators.*

**United States Department of State**

# Treaties in Force

# A List of Treaties and Other International Agreements of the United States in Force on January 1, 2020

This publication lists treaties and other international agreements of the United States on record in the Department of State on January 1, 2020, which had not expired by their own terms or which had not been denounced by the parties, replaced, superseded by other agreements, or otherwise definitely terminated.



Compiled by the Treaty Affairs Staff,
Office of the Legal Adviser,
U.S. Department of State

# MOROCCO

The independence of Morocco was recognized in a joint declaration signed March 2, 1956, on behalf of the Government of France and the Sultan of Morocco.

A diplomatic agreement on general relations between France and Morocco signed at Paris May 28, 1956, provided inter alia (1) that none of the provisions of that agreement must be interpreted as affecting the obligations which result either from the Charter of the United Nations or from agreements, treaties, or conventions in force between one of the High Contracting Parties and third powers (article 6), and (2) that Morocco assumes the obligations resulting from international treaties passed by France in the name of Morocco as well as those resulting from international acts relating to Morocco which have not been subject to observations on its part (article 11).

## CONSULAR AFFAIRS

Arrangement between the United States and France for the waiver by France of visa requirements for United States citizens visiting Metropolitan France and certain French territories, and for the granting by the United States of gratis passport visas to French citizens resident in those territories who enter the United States as nonimmigrants.*
*Exchange of notes at Paris March 16 and 31, 1949.*
*Entered into force March 31, 1949.*
63 Stat. 2737; TIAS 1987; 7 Bevans 1311; 84 UNTS 283
**Note:**
* The status of this agreement is under review.

## CULTURAL EXCHANGES, PROPERTY & COOPERATION

Agreement relating to the establishment of a Peace Corps program in Morocco.
*Exchange of notes at Rabat February 8 and 9, 1963.*
*Entered into force February 9, 1963.*
23 UST 209; TIAS 7297
**Amendment:**
March 10, 1972 (23 UST 209; TIAS 7297)

Cultural agreement.
*Signed at Washington February 10, 1967.*
*Entered into force February 10, 1967.*
18 UST 174; TIAS 6215; 688 UNTS 149

Agreement on the development and facilitation of tourism.
*Signed at Washington July 22, 1985.*
*Entered into force July 22, 1985.*
TIAS 12001

## DEFENSE

Agreement concerning mapping, charting and geodesy cooperation.
*Signed at Rabat April 29, 1982.*
*Entered into force April 29, 1982.*
34 UST 987; TIAS 10386

Agreement concerning the use of certain facilities in Morocco by the United States.
*Exchange of notes at Washington May 27, 1982.*
*Entered into force May 27, 1982.*
34 UST 1127; TIAS 10399; 1566 UNTS 139

Memorandum of agreement concerning hydrographic surveys and nautical charting.
*Signed at Rabat November 20, 1985.*
*Entered into force November 20, 1985.*
TIAS 11210

Memorandum of arrangement regarding assignment of liaison officers.
*Signed at Norfolk March 10, 2006.*
*Entered into force March 10, 2006.*
NP
**Amendments:**
February 17 and March 3, 2011 (NP)
March 4 and 7, 2016 (NP)

Agreement regarding grants under the Foreign Assistance Act of 1961, as amended, or successor legislation, and the furnishing of defense articles, defense services and related training, including pursuant to the United States International Military Education and Training (IMET) Program.
*Exchange of notes at Rabat July 21 and November 24, 2006.*
*Entered into force November 24, 2006.*
NP

Agreement concerning health care for military members and their dependents.
*Signed April 10 and July 4, 2013.*
*Entered into force July 4, 2013.*
NP
**Extension:**
June 7 and July 4, 2016 (NP)
September 13 and October 22, 2019 (NP)

Acquisition and cross-servicing agreement, with annexes.
*Signed at Stuttgart and Rabat April 27 and May 6, 2015.*
*Entered into force May 6, 2015.*
NP

## EDUCATION

Agreement establishing a Binational Commission for Educational and Cultural Exchange.
*Signed at Marrakech February 12, 1982.*
*Entered into force May 20, 1982.*
TIAS 10407; 34 UST 1180

Agreement regarding the system of American schools in Morocco.
*Signed at Rabat February 22, 2013.*
*Entered into force May 15, 2019.*
TIAS

## EMPLOYMENT

Agreement relating to the employment of dependents of official government employees.
*Exchange of notes at Rabat February 27 and April 2, 1992.*
*Entered into force April 2, 1992.*
TIAS

**Bilateral Treaties in Force as of January 1, 2020**

## ENVIRONMENT & CONSERVATION

Agreement for cooperation in the Global Learning and Observations to Benefit the Environment (GLOBE) Program, with appendices.
*Signed at Rabat March 27, 1996.*
*Entered into force March 27, 1996.*
TIAS 12739

## FINANCE

Agreement regarding the consolidation and rescheduling of certain debts owed to, guaranteed by or insured by the United States Government and its agencies, with annexes.
*Signed at Rabat December 30, 1983.*
*Entered into force February 10, 1984.*
TIAS 11015; 2022 UNTS 73

Agreement regarding the consolidation and rescheduling of certain debts owed to, guaranteed by or insured by the United States Government and its agencies, with annexes.
*Signed at Rabat December 23, 1985 and February 13, 1986.*
*Entered into force January 21, 1986.*
NP

Agreement regarding the consolidation and rescheduling of certain debts owed to, guaranteed by, or insured by the United States Government and its agencies, with annexes.
*Signed at Rabat March 1, 1988.*
*Entered into force April 11, 1988.*
NP

Agreement regarding the consolidation and rescheduling of certain debts owed to, guaranteed by, or insured by the United States Government and its agencies, with annexes.
*Signed at Rabat August 21, 1989.*
*Entered into force September 25, 1989.*
NP

Agreement regarding the consolidation and rescheduling or refinancing of certain debts owed to, guaranteed by, or insured by the United States Government and its agencies, with annexes.
*Signed at Rabat February 14, 1991.*
*Entered into force March 29, 1991.*
NP

Agreement regarding the consolidation and rescheduling or refinancing of certain debts owed to, guaranteed by, or insured by the United States Government and its agencies, with annexes.
*Signed at Rabat August 24, 1992.*
*Entered into force October 12, 1992.*
NP

Investment incentive agreement.
*Signed at Washington March 15, 1995.*
*Entered into force September 22, 1999.*
TIAS 99-922

## FOREIGN ASSISTANCE

Agreement providing for economic, technical, and related assistance.
*Exchange of notes at Rabat April 2, 1957.*
*Entered into force April 2, 1957.*
8 UST 459; TIAS 3799; 288 UNTS 157.
**Amendment:**
May 19, 1958 (9 UST 923; TIAS 4054; 317 UNTS 354).

Millennium Challenge Compact.
*Signed at Rabat November 30, 2015.*
*Entered into force June 30, 2017.*
TIAS 17-630

## INTERNATIONAL CRIMINAL COURT

Agreement regarding the surrender of persons to the International Criminal Court.
*Signed at New York September 24, 2003.*
*Entered into force November 19, 2003.*
TIAS 03-1119

## LAW ENFORCEMENT

Convention on mutual assistance in criminal matters.
*Signed at Rabat October 17, 1983.*
*Entered into force June 23, 1993.*
TIAS 93-623

Agreement regarding joint cooperation in fighting against international terrorism, organized crime, and the illicit production, trafficking and abuse of narcotics.
*Signed at Rabat February 10, 1989.*
*Entered into force February 10, 1989.*
TIAS 12029

Agreement regarding mutual assistance between customs administrations.
*Signed at Washington November 21, 2013.*
*Entered into force February 1, 2016.*
TIAS 16-201

## NUCLEAR ENERGY

Agreement for cooperation concerning peaceful uses of nuclear energy, with annex and agreed minute.
*Signed at Washington May 30, 1980.*
*Entered into force May 16, 1981.*
32 UST 5823; TIAS 10018; 1267 UNTS 101
**Amendment**
September 20, 2001 (TIAS 13168)

Arrangement for the exchange of technical information and cooperation in nuclear safety matters, with addenda and annex.
*Signed at Vienna September 20, 2017.*
*Entered into force September 20, 2017.*
TIAS 17-920.2

**Bilateral Treaties in Force as of January 1, 2020**

## PEACE

Treaty of peace.*
*Signed at Meccanez September 16, 1836.*
*Entered into force January 28, 1837.*
8 Stat. 484; TS 244-2; 9 Bevans 1286
**Note:**
\*   Extraterritorial jurisdiction in Morocco relinquished by the United States October 6, 1956.

## POSTAL MATTERS

International express mail agreement, with detailed regulations.
*Signed at Rabat and Washington March 18 and May 11, 1988.*
*Entered into force June 1, 1988.*
TIAS 11588

## SCIENTIFIC & TECHNICAL COOPERATION

Agreement on science and technology cooperation, with annexes.
*Signed at Rabat November 14, 2006.*
*Entered into force February 8, 2012.*
TIAS 12-208

## SPACE

Agreement concerning the use of Ben Guerin Air Base as a space shuttle emergency landing site.
*Signed at Rabat and Washington January 21 and 28, 1987.*
*Entered into force January 28, 1987.*
TIAS 12209

## TAXATION

Convention for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income, with related notes.*
*Signed at Rabat August 1, 1977.*
*Entered into force December 30, 1981.*
33 UST 2545; TIAS 10194
**Note:**
\* With reservation and understanding.

Agreement interpreting certain articles of the convention of August 1, 1977 (TIAS 10194).*
*Signed at Washington and Rabat October 25, 1979, and at Rabat April 17, 1981.*
*Entered into force December 30, 1981.*
33 UST 2672; TIAS 10195
**Note:**
\* With reservation and understanding.

## TRADE & INVESTMENT

Treaty concerning the encouragement and reciprocal protection of investments, with protocol.
*Signed at Washington July 22, 1985.*
*Entered into force May 29, 1991.*
TIAS

Agreement concerning the development of trade and investment relations, with annex.
*Signed at Washington March 16, 1995.*
*Entered into force March 16, 1995.*
TIAS 95-316

The United States-Morocco free trade agreement, with annexes.
*Signed at Washington June 15, 2004.*
*Entered into force January 1, 2006.*
TIAS

## TRANSPORTATION

Memorandum of agreement on technical assistance with the Federal Aviation Administration, with annex.
*Signed at Rabat April 18, 1983.*
*Entered into force April 18, 1983.*
TIAS 10702; 2005 UNTS 175

Air transport agreement, with annexes.
*Signed at Rabat October 10, 2001.*
*Entered into force August 19, 2002.*
TIAS 13165

# MOZAMBIQUE

## CULTURAL EXCHANGES, PROPERTY & COOPERATION

Agreement concerning the program of the Peace Corps in Mozambique.
*Signed at Maputo December 27, 1991.*
*Entered into force December 27, 1991.*
TIAS 91-1227

## DEFENSE

Agreement concerning the provision of training related to defense articles under the United States International Military Education and Training (IMET) Program.
*Exchange of notes at Maputo November 7, 1984 and April 12, 1985.*
*Entered into force April 12, 1985.*
TIAS 11338

Agreement regarding grants under the Foreign Assistance Act of 1961, as amended, and the furnishing of defense articles, related training and other defense services from the United States to Mozambique.
*Exchange of notes at Maputo March 30 and May 13, 1994.*
*Entered into force May 13, 1994.*
TIAS
**Amendment:**
June 23 and August 23, 2004

dasmin jerel, a living soul acting as
DASMIN JEREL COOK, *In Propria Persona*
On the land of the county at Large, Coweta.
Non-Domestic c/o: 54 Hill Street; near
Newnan. Georgia. [zip exempt]
Without the United States (28 U.S.C. 1746)

**In the superior court of Coweta County**
*via passagio*
**COWETA COUNTY SUPERIOR COURT**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| STATE OF GEORGIA, | ) | |
| Plaintiff, | ) | |
| v. | ) | district court CASE NO.: |
| DASMIN JEREL COOK , | ) | STATE CASE NO.: SUR2021000984 |
| Defendant/Interpleader | ) | INTERPLEADER'S NOTICE OF NOTICE OF REMOVAL TO FEDERAL JURISDICTION UNDER 28 U.S.C. §§ 1335, 1331, 1333, 1443, 1455, 2461, 2463 and Local Rule 67 et seq. |
| ——————————————— | ) | |
| By: dasmin jerel; and cook, aka Prince Bey, living | ) | |
| Heir | ) | |
| Interpleader/Claimant. | ) | |

***To the Clerk of the superior court and Chief Judge owing supervisory duties:***

You are hereby notified that dasmin jerel, appearing now *In Propria Persona*, gives Notice to this Court of her removal of this cause of action in the nature of Interpleader and 28 U.S.C. §§ 1335, 1331, 1333, 1443, 1455, 2461, 2463 and Local Rule 67 et seq. This Court is without jurisdiction to proceed unless and until the remand of this action by order of the district court of the United States, side of the exchequer. Respectfully filed with the court of record this 20th day of January, in the year 2023.

DASMIN JEREL COOK,  Interpleader/Claimant

By: _____

dasmin jerel; and cook,
*In Propria Persona* not Individually.